1

2

3

```
___ FILED      ___ ENTERED
___ LODGED     ___ RECEIVED
```

DEC 0 2 2005   DB

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

4

5

6

7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

8

9

ITI INTERNET SERVICES, INC., a
Washington corporation; HIMC
CORPORATION, a corporation; RPE FAMILY
TRUST, an irrevocable living trust formed
under the laws of the state of Washington;
PAMELA EHLI, RONALD EHLI, VIRGIL
LLAPITAN, AND DOES 1-15, inclusive,

10

11

12

13

No.:

# CV05-2010 TSZ

Plaintiffs,

14

v.

15

16

17

18

19

20

21

22

23

24

25

SOLANA CAPITAL PARTNERS, INC., a
California corporation; LUKE D'ANGELO;
AJZ ASSOCIATES, LLC; CADUCEUS
PARTNERS, LLC; CLARION
INVESTMENTS, LLC; R. A. MACTIRE, LLC;
CAN-AM ROOFING LIMITED; GOLD
HAWK GROUP, LTD.; TIMOTHY da SILVA;
SAFEGUARD HOLDINGS GROUP, LLC, a
Nevada limited liability company;
CHRISTOPHER QUEEN; AARON J.
McCANN; CALEX PARTNERS, LLC, a New
York limited liability company; HENRY (JAY)
GURLEY III; RALPH TENEBRUSCO;
GRANT BETTINGEN, INC.; GRANT
BETTINGEN; SPAGS INVESTMENT
GROUP, a foreign corporation organized under
the laws of Curacao, Netherlands Antilles;
STEPHEN BLUM; RAICE, PAYKIN,
GREENBLATT, LESSER & KREIG, L.L.P., a
New York limited liability partnership and any
successor or predecessor thereto; JOSEPH N.
PAYKIN; DAVID C. THOMAS; DOUGLAS

## COMPLAINT



05-CV-02010-CMP

COMPLAINT - 1

CASE NO. CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

1  MILLARD, individually and d/b/a MILLARD
   ESCROW ACCOUNT; MARVIEW
2  HOLDINGS, INC.; 4 POINTS LAKE L.L.C., a
   Minnesota limited liability company; JUDY
3  MORTON JOHNSTON; TCKTS LLC d/b/a
   Bristol Media Ltd.; CLIFFORD JOHNSTON
4  and his ESTATE; XXX ENTERPRISES, LLC;
   JERRY CORNWELL; WESTERN CLEARING
5  CORP., LLC; K. MITCHELL WIGGINS;
   STEVEN WOHLWEND AND ASSOCIATES,
6  a partnership; FIDELITY TRANSFER
   COMPANY, a corporation; KEVIN
7  KOPAUNIK; CCG/COFFIN, MOTTOLA
   COMMUNICATIONS; SAGE MEDIA &
8  COMMUNICATIONS, INC.; HIMC
   Corporation, ROES 1-15, inclusive,
9
                              Defendants.
10
11

Plaintiffs through their undersigned counsel, allege as follows:

## I. Introduction

This case arises under Federal and State Securities, Wire Fraud and Anti-Racketeering Laws and the state law equivalents thereof. Certain state law claims are within the pendent and ancillary jurisdiction of the Court.

The case involves claims arising from the attempted "reverse merger" of Plaintiff ITI Internet Services, Inc. ("ITI"), a private local company into Plaintiff/Defendant "shell" company - HIMC Corporation ("HIMC"); the commencement of trading of the common stock of HIMC in the over the counter market listed in the pink sheets; an elaborate escrow account scheme providing for a "gypsy swap" of "free-trading stock" for "restricted stock" of HIMC for the purpose of engaging in a distribution of unregistered securities; a "pump-and-dump" scheme involving communications to the public through "press releases" in connection with open market trading by insiders of the common stock of HIMC and non-insider trading by others; a "hostile takeover" attempt of HIMC through a "proxy fight" by certain if not all Defendants to

COMPLAINT - 2

CASE NO. CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

dispossess the management and principal shareholders in HIMC and to install others having a fundamental involvement in the schemes set forth in this complaint; and other similar and contributing unlawful plans, schemes, designs and artifices.

## II. Jurisdiction and Venue

1.     Jurisdiction and venue of this Court are founded on Section 27 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. §78aa; Title 28 U.S.C. §§ 1331, 1337, and principles of pendent and ancillary jurisdiction; Title 18 U.S.C. §1964; and Title 28 U.S.C. §§1391 (b)(2) and (3).

2.     The claims herein arise under sections 5, 12 and 17 of the Securities Act of 1933, 15 U.S.C. §§77(e), 77(l) and 77(q); §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5, promulgated thereunder by the Securities and Exchange Commission (the "SEC")[Securities Fraud], 18 U.S.C. §§1341 [Mail Fraud], 1343 [Wire Fraud] and 1962 [RICO]; and the principles and statutes of Washington law.

3.     Acts and conduct of Defendants charged herein, including the dissemination of false and misleading information to Plaintiffs and others, occurred in this federal judicial district.  In addition, Defendants 4 Points Lake, LLC,  HIMC and TCKTS L.L.C. d/b/a Bristol Media Ltd. and Western Clearing Corp, LLC maintained business offices located in this District at all times material to the acts and course of conduct alleged in this complaint.

4.     In connection with the acts and course of conduct alleged in this complaint, the Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mails and interstate telephone communications, and the facilities of public securities markets.

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

### III. Parties

5.    Plaintiff ITI Internet Services, Inc. ("ITI") is a Washington corporation having its principal place of business in Tacoma, Washington and has been falsely described as the operating subsidiary of HIMC.

6.    Plaintiff HIMC Corporation ("HIMC") is a corporation having its principal place of business in Tacoma, Washington. HIMC is formerly known as Healthguard International Marketing, Corporation and prior to entering into a business combination agreement with ITI, had no meaningful business operations. Because of certain allegations contained herein in connection with the business combination, HIMC is also and in the alternative a named Defendant in this lawsuit.

7.    Plaintiff Pamela Ehli ("Pam Ehli") is a person residing in Tacoma, Washington and at all times material hereto was a Director of Plaintiff ITI and HIMC and is a beneficiary of the Plaintiff RPE Family Trust.

8.    Plaintiff Ronald Ehli ("Ron Ehli") is a person residing in Tacoma, Washington and is and has been the founder, President and chief executive officer of ITI.

9.    Plaintiff RPE Family Trust ("RPE") is an irrevocable living trust created under the laws of the state of Washington and whose trustee is resident in Tacoma, Washington. RPE is an HIMC shareholder.

10.    Plaintiff Virgil Llapitan ("Llapitan") is a person residing in Buckley, Washington and is and has been a director of HIMC and its President. Llapitan is an HIMC shareholder.

11.    Plaintiff Does 1-15 are as yet unidentified Plaintiffs purchasing shares of common stock in HIMC Corporation or otherwise having a claim in this case. Does 1-15 are HIMC shareholders.

12.    Defendant Aaron J. McCann ("McCann") is a person believed to be residing in Plano, Texas who was the named chief executive officer ("CEO") of HIMC for a period

COMPLAINT - 4

CASE NO.  CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

1   commencing on or about January 2005 and continuing until May 2005. Mr. McCann was an

2   operative of certain Defendants including Solana and Johnston and their affiliates and prior to

3   being named CEO of HIMC worked with or for HIMC from mid-summer 2004 to January 2005.

4        13.    Defendant Solana Capital Partners, Inc. ("Solana") is a California corporation and

5   was engaged by way of a Consulting Agreement to render certain services, including illegal

6   services, to HIMC.

7        14.    Defendant Luke D'Angelo ("D'Angelo") is a resident of the state of California

8   and a principal in Solana.

9        15.    Defendant Timothy Da Silva ("Da Silva") is a resident of the state of California

10   and is an employee, associate or affiliate of both Solana and Safeguard.

11        16.    Defendant Safeguard Holdings Group, LLC ("Safeguard") is a resident of Nevada

12   and California and is an affiliate of Solana.

13        17.    Defendant Christopher Queen ("Queen") is a resident of California and is an

14   employee, associate or affiliate of both Solana and Safeguard.

15        18.    Defendant Calex Partners, LLC ("Calex") is a New York partnership whose

16   members include Gurley and Tenebrusco.

17        19.    Defendant Henry (Jay) Gurley III ("Gurley") is a resident of New York and is a

18   member of Calex. Gurley is an employee, associate or affiliate of Bettingen.

19        20.    Defendant Ralph Tenebrusco ("Tenebrusco") is a resident of New York and is a

20   member of Calex. Tenebrusco is an employee, associate or affiliate of Bettingen.

21        21.    Defendant Grant Bettingen, Inc. ("Bettingen Inc.") is a corporation based in

22   Newport Beach, California and is a registered broker and dealer in securities.

23        22.    Defendant Grant Bettingen ("Bettingen") is a person residing in Newport Beach,

24   California and on information and belief is the registered principal of Grant Bettingen, Inc.

25

COMPLAINT - 5

CASE NO. CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

23.     Defendant SPAGS Investment Group ("SPAGS") is a foreign off-shore entity organized under the laws of Curacao, Netherlands Antilles.

24.     Defendant Stephen Blum is a resident of New York and is the managing member of SPAGS.

25.     Defendant Raice, Paykin, Greenblatt, Lesser & Kreig, LLP ("Raice Paykin") is a New York limited liability partnership engaged in the practice of law in New York and New Jersey and on information and belief is the successor in interest to Raice, Paykin & Kreig, LLP.

26.     Defendant Joseph N. Paykin ("J. Paykin") is a lawyer and a partner in Raice Paykin working in New York City. J. Paykin is also the "trustee" of an escrow set up in connection with an illegal private offering of the common stock of HIMC.

27.     Defendant David C. Thomas ("Thomas") is a lawyer and a partner in Raice Paykin.

28.     Defendant Douglas Millard ("Millard") is a person residing in Seattle, Washington and is the "trustee" of the Millard Escrow Account, a fictitious entity set up for the sole purpose of effecting a "gypsy swap" of the shares of common stock of HIMC.

29.     Defendant Millard Escrow Account is the alter ego of Defendant Millard.

30.     Defendant 4 Points Lake, LLC ("4 Points Lake") is a Minneapolis limited liability company having as its principal business address Seattle, Washington whose two members are Clifford Johnston and Judy Morton Johnston.

31.     Defendant Judy Morton Johnston ("Judy Johnston") is a person residing in Seattle, Washington and is the managing member of 4 Points Lake. The only other member of 4 Points Lake, LLC is Clifford Johnston, who died on August 23, 2005.

32.     Defendant TCKTS LLC d/b/a Bristol Media Ltd. ("TCKTS") is a Washington company having as its principal place of business Seattle, Washington. Defendant Cornwell is the managing member of TCKTS LLC.

COMPLAINT - 6

CASE NO.  CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

1    33.    Defendant the Estate of Clifford Johnston is a jurisdictional person residing in the

2    state of Washington. Clifford Johnston is sometimes referred to herein as "Johnston".

3    34.    Defendant Jerry Cornwell ("Cornwell") is a resident of the state of California and

4    is the managing member of TCKTS and XXX and a long-time business associate of Clifford

5    Johnston.

6    35.    Defendant XXX Enterprises, LLC ("XXX") is a company doing business at Palm

7    Dessert, California.

8    36.    Defendant Western Clearing Corp, LLC ("Western") is a Nevada limited liability

9    company registered in Washington as a foreign company having as its principal place of business

10    Federal Way, Washington. Defendant Wiggins is the managing member of Western.

11    37.    Defendant W. Mitchell Wiggins ("Wiggins") is a resident of Seattle Washington.

12    38.    Defendants Steven Wohlwend and Steven Wohlwend and Associates ( together

13    "Wohlwend") maintains offices in Federal Way, Washington. On information and belief, Steven

14    Wohlwend Associates is the alter ego of Steven Wohlwend.

15    39.    Defendant HIMC Corporation is a corporation having as its principal place of

16    business Tacoma, Washington.

17    40.    Defendant Fidelity Transfer Company, a  corporation ("Fidelity") has a principal

18    place of business in Salt Lake City, Utah and is the transfer agent for the shares of stock of

19    HIMC.

20    41.    Defendant Kevin Kopaunik is the president of Fidelity.

21    42.    Defendants AJZ  Associates, LLC ("AJZ"), Caduceus Partners, LLC

22    ("Caduceus"), Clarion, LLC ("Clarion"), R. A. MacTire, LLC ("MacTire"), Can-Am Roofing

23    LTD. ("Can-Am") and Gold Hawk Group, LTD. ("Gold Hawk")  are all entities who, on

24    information and belief, were original shareholders in HIMC and were transferors, transferees and

25    sellers of HIMC common stock into, by and through the Millard Escrow Account, or otherwise.

COMPLAINT - 7

CASE NO.  CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

43.     Defendant Marview Holdings, Inc. is a corporation that, on information and belief, was the transferee of some if not all of the HIMC common stock transferred from the Millard Escrow Account and is an affiliate of Defendant Solana.

44.     Defendant CCG/Coffin, Mottola Communications ("CCG") is a California company having business offices in Newport Beach, California.

45.     Defendant Roes 1-10 are as yet unidentified Defendants participating in or otherwise playing a role in the schemes or any one of them alleged in this complaint.

### IV. Facts Common to All Claims

46.     In 1993, a corporation was formed under the laws of the state of Washington named Healthguard International Marketing, Corporation. The name of the corporation was subsequently changed by amendment of the articles of incorporation to HIMC Corporation ("HIMC"). At all times material herein HIMC had no meaningful business operations and was what is commonly called a "shell".[1]

47.     Plaintiff ITI Internet Services, Inc. ("ITI") is a local Tacoma business founded and grown by Ron and Pam Ehli. ITI is engaged in the business of facilitating the processing of Internet on-line payments systems through the facilities of Automated Clearing House (ACH) and other means. Ron Ehli is and all times material hereto has been the President, CEO and a director of ITI. Pam Ehli was the other director of ITI.

48.     In November of 2001, ITI entered into an agreement with Valhalla Financial Group, LLC pursuant to which agreement Valhalla was to go out and locate a public company shell into which or with which ITI could merge or otherwise be acquired. Valhalla was

---

[1] While another corporation was formed by or at the request of Clifford Johnston with the same name under the laws of the state of Nevada, for the purposes of this litigation Plaintiffs admit that HIMC is a Washington corporation and is the proper party to these proceedings. Plaintiffs do not admit however that any and all of the agreements purporting to be by, between or among HIMC the Nevada corporation are or should be construed to be obligations of HIMC the Washington corporation.

COMPLAINT - 8

CASE NO. CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

1  controlled by Defendants Johnston and Cornwell. A copy of this agreement is attached hereto as

2  Exhibit A and made a part herein by this reference.

3      49.     In December 2001, and at the instigation of Clifford Johnston, HIMC and ITI

4  entered into an agreement and plan of business combination ( the "Business Combination

5  Agreement") whereby ITI would be acquired by HIMC through an exchange of 100% of the

6  common stock of ITI for 5,000,000 shares of HIMC common stock (the "share exchange"). A

7  copy of the Business Combination Agreement dated December 2001 is attached hereto as

8  Exhibit B and made a part herein by this reference.

9      50.     ITI's sole shareholder (subject to community property interests of Pam Ehli) at

10  the time of the Business Combination Agreement was Ron Ehli, so he received the 5,000,000

11  shares of common stock in HIMC called for by that agreement.

12      51.     Immediately prior to the execution of the Business Combination Agreement the

13  directors and officers of HIMC were Clifford Johnston, Judy Morton Johnston and Jerry

14  Cornwell.

15      52.     Prior to the share exchange, there were 2,941,002 shares of HIMC common stock

16  issued and outstanding. On information and belief, prior to the share exchange all shares

17  previously issued had been purchased or otherwise acquired by shareholders for $.04 or less, and

18  generally for $.01. After the issuance to Ron Ehli,  there were approximately 7,941,002 shares of

19  HIMC common stock issued and outstanding.

20      53.     No articles of merger or exchange were ever filed with the Secretary of State of

21  Washington or in any other state reflecting the combination and merger of these two businesses.[2]

22  This is true even though the Business Combination Agreement clearly contemplated such filing

23

24

---

25  [2] Copies of certificates obtained for counsel from the Secretary of State clearly attesting that no articles of merger or share exchange were ever filed are attached hereto as Exhibit C and made a part herein by this reference.

COMPLAINT - 9

CASE NO.  CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

by specifying that it was the intent of the parties to qualify as a tax free reorganization under Section 368 (a)(1)(B) of the Internal Revenue Code of 1954, as amended.

54.     At some point after the Business Combination Agreement was signed, the officers and directors of HIMC resigned and new officers and directors consisting of Jon Wiles, Pam Ehli and Virgil Llapitan were appointed to the Board of Directors of HIMC (the "Board").[3] The resignations and appointments were to become effective December 31, 2001.

55.     Notwithstanding the resignation from the board and as an officer of HIMC by Clifford Johnston, he continued to represent himself as the "President" of HIMC at least until February 12, 2002. A copy of a document filed with the Secretary of State purporting to be Articles of Amendment to the Articles of Incorporation of HIMC is attached hereto as Exhibit D and made a part herein by this reference. On information and belief, at all times material herein Clifford Johnston acting alone and in concert with certain if not all other Defendants continued to exercise, directly or indirectly, control over the business affairs of HIMC.

56.     One of the inducements to ITI entering into the Business Combination Agreement was the ability of Clifford Johnston and his associates to raise capital for ITI so that it could grow and expand its business. After the execution of the Business Combination Agreement a scheme was devised and implemented to give the appearance of raising capital for HIMC by engaging in a technique commonly know as a "gypsy swap."[4]

57.     In September 2003, Defendants Johnston and Millard, with the knowledge of Defendants Cornwell, Judy Johnston, Wiggins, Western and others created an "escrow trust" with Millard serving as escrow "trustee" (the "Millard Escrow Account" or "Douglas Millard

---

[3] Mrs. Ehli is a school teacher and Mr. Llapitan was an insurance salesman.
[4] The blueprint or roadmap for the gypsy swap is set forth in the recitals of the HIMC CORPORATION FINANCING AGREEMENT dated July 21, 2004, a copy of which is attached as Exhibit F and made a part herein by this reference.

COMPLAINT - 10

CASE NO.  CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

1   Escrow"). A copy of the Master Escrow Trust agreement is attached hereto as Exhibit F and

2   incorporated herein by this reference.

3        58.    On information and belief, Defendants AJZ, Caduceus, Clarion, 4 Points Lake,

4   MacTire, Can-Am, Western and XXX, transferred or caused to be transferred their "free-trading"

5   shares of common stock in HIMC to Millard Escrow Account during the fourth quarter of 2003.

6   Defendants Wohlwend and Western also engaged in transactions in HIMC common stock

7   outside of but connected with the operation of the Millard Escrow Account.

8        59.    In July 2004, the Millard Escrow Account a/k/a the Douglas Millard Escrow was

9   caused by certain Defendants Johnston, Cornwell, Wiggins and others to enter into an agreement

10  to subscribe for the purchase of 2,163,265 shares of HIMC common stock from HIMC at a

11  purchase price of $0.49 per share for gross proceeds to HIMC if completed of $1,060,000. A

12  copy of this Stock Purchase Subscription Agreement is attached hereto as Exhibit G and made a

13  part herein by this reference. A similar agreement of even date was entered into with Defendant

14  Wohlwend covering 612,244 shares.

15       60.    In August 2004, Defendants Johnston, Cornwell, Gold Hawk and others caused

16  HIMC to enter into a Consulting Agreement with Solana pursuant to which consulting agreement

17  Solana received an option to acquire 2,250,000 shares of HIMC common stock for $0.125 per

18  share. The Consulting Agreement required among other things the hiring of Defendant McCann

19  as CEO of HIMC, on terms acceptable to Solana. A copy of the Consulting Agreement is

20  attached hereto as Exhibit H and made a part herein by this reference. A copy of the actual

21  Option Agreement memorializing the agreement set forth in the Consulting Agreement is

22  attached hereto as Exhibit I and made a part herein by this reference. The Option agreement was

23  subsequently assigned to Defendant and Solana affiliate Safeguard and was exercised pursuant to

24  its terms by Safeguard. Evidence of the assignement and exercise is attached hereto as Exhibit J

25  and made a part herein by this reference.

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

61.   In September 2004, The Millard Escrow Account entered into an agreement with Defendant Solana providing for the transfer or sale of the free-trading stock it had accumulated to Solana, acting on behalf of itself and third parties, at prices of between $.60 and $.90 per share. A copy of the Stock Purchase Agreement dated September 2004 is attached hereto as Exhibit K. On information and belief this agreement was subsequently modified and the price of the stock sold to Solana was ultimately set at $.90 per share.

62.   As a result of these related and interlocking agreements, the Millard Escrow Account was able to sell and did sell the free-trading stock it held for $.60 to $.90 per share to Solana but would only purchase stock from HIMC at $.49 per share, thus resulting in a gross gain to the Millard Escrow Trust of $.11 to $.41 per share available to be distributed to participants in the Millard Escrow Trust, net of fees and expenses to insiders. On information and belief, the common stock of HIMC obtained by Solana in connection with these transactions was in fact sold in the open market for $.90 or greater.

63.   In December 2004, Defendants J. Paykin and the law firm of Raice Paykin were engaged to, among other things, perform legal services in connection with preparing documentation to complete the contrived private offering of common stock by HIMC to the Millard Escrow Account and Solana. The Paykin Trust Fund was created to provide for the preparation of documents related to the private offering of HIMC common stock and to prepare and file a registration statement. A copy of the Master Share Purchase Agreement creating these relationships and describing the transactions is attached hereto as Exhibit L and made a part herein by this reference.

64.   Also in November or December 2004, Defendant investment banking firm Bettingen, Inc. and Bettingen and Gurley thereof were retained to render financial advisory services to and raise capital for HIMC. A copy of the letter agreement memorializing this arrangement is attached hereto as Exhibit M and made a part herein by this reference.

COMPLAINT - 12

CASE NO. CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

65. As a result of the scheme and on information and belief cash balances in excess of the private offering price of HIMC common stock were generated in the Millard Escrow Account and the excess funds dispersed or otherwise paid to participants to the detriment of HIMC.

66. The excess funds otherwise belonging to HIMC were not released to HIMC and were otherwise invaded by participants, to the detriment of HIMC and its shareholders.

67. In connection with all the transactions involving the registration and transfer of securities as alleged herein, HIMC employed Defendant Fidelity and Kopaunik thereof to effect the illegal transfers of securities as among purchasing and non-purchasing but transferee Defendant participants and the investing public.

68. After the distribution of securities described herein, Defendant McCann at the request and with full knowledge of the other Defendants (certain of which were holders of HIMC securities,) commenced on a campaign to prepare and issue false press releases having the objective of creating the appearance of business growth, progress and prosperity. Plaintiffs attach five press releases which they believe and have reason to believe are false, misleading and generally fraudulent. These release are attached hereto and accumulated under Exhibit N and made a part herein by this reference. Defendants CCG and Sage assisted in the preparation of these and other press releases.

69. The price in the over the counter market as reflected in the Pink Sheets of the common stock of HIMC was artificially kept at a higher price than business reality would have indicated. Attached hereto as Exhibit O is a running record of the date price and volume of transactions made in the common stock of HIMC obtained from sources believed to be reliable. On information and belief, substantially all the large trades (involving large numbers of shares of stock) were effected by Defendants, separately and acting in concert.

COMPLAINT - 13

CASE NO. CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

1    70.    As a result of the fraudulent press releases the market price of HIMC common

2  stock went from as low as $1.65 per share to as high as $2.95 per share from the period of time

3  January 13, 2005 to April 13, 2005.

4    71.    In the first quarter of 2005 it became clear to management of HIMC and its

5  advisers the HIMC would require additional capital if it was going to achieve the growth in

6  business Defendant's had been representing to the investing public and others that it could

7  achieve.

8    72.    In that regard, Defendant McCann along with Solana and Bettingen, Inc. and

9  certain other Defendants were charged with the responsibility of raising additional capital for

10  HIMC.

11    73.    In May or June of 2005,  National Securities, a capital provider, was found but

12  ostensibly the capital was not provided because of Ron Ehli's allegedly undisclosed prior

13  conviction of a felony many years ago.

14    74.    At formal meetings and a private meeting occurring on or about June 2005 in

15  Seattle and Tacoma Washington, Pam Ehli and Virgil Llapitan, management of HIMC were

16  given an ultimatum to resign, rehire the previously terminated McCann and install Defendants

17  own board members and to otherwise leave HIMC. Plaintiff Llapitan was informed at a private

18  meeting by Defendant D'Angelo that if HIMC management did not acquiesce in the Defendants

19  demands, a hostile take-over was imminent.

20    75.    Prior to these meetings, and without the knowledge of Plaintiffs and each of them,

21  Defendant Johnston, with the knowledge aid and assistance of Defendants had planned for and

22  put into action a plan to conduct a proxy fight for control of the board of directors of HIMC and

23  to engage in a hostile takeover of HIMC. A copy of a letter from Johnston to David Adler an

24  attorney and participant in the scheme is attached hereto as Exhibit P and made a part herein by

25  this reference.

COMPLAINT - 14

CASE NO.  CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

76. In furtherance of the plan to take over HIMC, Defendants and each of them engaged in a proxy solicitation effort whereby they contacted by telephone and use of the mail sharcholders of HIMC, including Defendants, in order to obtain their signatures on a proxy prepared by them granting certain of the Defendants power to vote the shares owned by the solicited shareholders.

77. Other than the self-prepared proxy form, Defendants made no effort to distribute any information in writing about their interests in the proxy solicitation or fundamental information about the background and experience of their slate of directors or plans for HIMC or why they were soliciting the proxies in the first place.

78. As a result of the meetings alleged in paragraph 74, HIMC management called, planned for and conducted an Annual Meeting of Shareholders on July 19, 2005. As Defendants had planned, certain of the Defendants attending the Annual Meeting of Shareholders, were loud, rude and otherwise obnoxious and did everything in their power, especially Johnston, to disrupt the meeting and otherwise confuse a relatively straight-forward agenda.

79. A law suit was commenced in state court solely for the purpose of furthering the plans set forth earlier and for the benefit of certain of the Defendants in taking control of HIMC as planned.

80. It now is established that certain of the Defendants did not own stock, did not vote or attempt to vote at the Annual Meeting and otherwise had no capacity to bring the state court action.

81. Only recently as a result of discovery in the state court action which has been obstructed by counsel for Plaintiffs in that action have the true nature of Defendants activities come to light and facts sufficient to commence this lawsuit been ascertained.

82. In the final analysis, the entire scheme from beginning to the current time has been gauged to dispossess Ron and Pamela Ehli from HIMC they founded and built to viability,

COMPLAINT - 15

CASE NO.  CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

1    and to defraud the public into believing that HIMC was growing and prospering through mergers

2    and acquisitions; all for the purpose of causing the artificial increase in the price of HIMC

3    common stock so that they could sell their own shares of HIMC common stock at a profit.

### V. Causes of Action

### First Claim – Securities Fraud

6      83.     Plaintiff repeats and realleges each and every allegation contained above as if

7    fully set forth herein.

8      84.     The following representations or omission of Defendants were materially false

9    and misleading :

10      A. Defendants Clifford Johnston, Judy Johnston, Cornwell, 4 Point Lake and failed to

11    represent that merger agreement would not be filed or that it had not been filed;

12      B. Represented and continued to represent that ITI was a wholly owned subsidiary of

13    HIMC;

14      C. Defendants Clifford Johnston, Judy Johnston, Cornwell, 4 Point Lake falsely

15    represented that the merger would qualify as a Type B merger under the Internal Revenue Code

16    of 1954, as amended;

17      D. Defendants failed to represent that existing shareholders of HIMC were selling

18    common stock priced from $.60 to $.90 per share while HIMC would only receive $.49 per share

19    in a collateral private offering by HIMC;

20      E. Defendants failed to timely disclose that existing shareholders paid from $.01 to $.03

21    per share for the HIMC common stock they were contriving a sale for at $.60 to $.90 per share;

22      F. Failed to represent that in the future they would engage in a take-over attempt to

23    remove directors and officers originally installed as a result of the business combination;

24

25

COMPLAINT - 16

CASE NO. CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

G. Failed to disclose that in connection with the issuance of HIMC common stock HIMC would be receiving proceeds substantially less than amounts received by certain selling shareholders;

H. Failed to disclose in connection with solicitation of proxies that certain non-management director nominees had engaged in significant and material self-dealing;

I. Failed to deliver any written disclosure whatsoever setting forth even fundamental information about the non-management proposals for seizing control of HIMC;

J. Falsely claimed in oral communications and otherwise in connection with the solicitation of proxies that the HIMC's and ITI's officers and directors were stealing or otherwise misappropriating HIMC corporate funds to their own use;

K. Falsely claimed in connection with the solicitation of proxies and otherwise that HIMC wrongfully and without justification fired  McCann and as a result that the remaining officers and directors where incapable of managing the affairs of HIMC;

L. Failed to disclose the particular interests of the persons soliciting proxies in achieving a takeover of the board of directors of HIMC at the annual shareholders meeting or otherwise;

M. Failed to disclose that the prospectus prepared and circulated to raise capital was false and misleading;

N. Caused HIMC to prepare and publish false and misleading press releases designed to give the appearance of success and growth through acquisitions when in fact the developments being reported either were not finalized and never would be finalized;

O. Failed to disclose the acquisitions previously reported would not be completed;

P. Prepared and presented bogus proxies to be tallied at the annual Meeting of Shareholders of HIMC. A copy of one such bogus proxy offered as an exemplar is attached hereto as Exhibit Q.

COMPLAINT - 17

CASE NO.  CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

85. The false statements and omissions alleged herein were made in connection with the purchase and sale of securities.

86. The false statements and omissions alleged herein were in all respects material.

87. The false statements and omissions alleged herein were not made within a situation providing any "safe harbor" from liability for such statements.

88. The false statements and omissions alleged herein were made under circumstances in which the Defendants knew the falseness of their statements and failure to make statements rendering other statements made not false and intended to have the effect of causing injury to Plaintiffs.

89 Plaintiffs relied on the statements of Defendants to their detriment.

90. *Plaintiffs loss as claimed herein is as a result of the knowing and fraudulent statements of Defendants.*

91. Plaintiffs have been damaged in the diminution of the value of the HIMC common stock that they possess and in the value of the business of ITI and HIMC as a going concern and in the market value of the common stock of HIMC as more specifically set forth in the prayer for relief contained herein.

92. The Defendants and each of them are jointly and severally liable to Plaintiffs.

## Second Claim – Wire Fraud/Mail Fraud

93. Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

94. Defendants devised and engaged in a scheme to defraud Plaintiffs through the use of untrue and materially misleading statements or omissions both in the sale and distribution of HIMC stock and the solicitation of proxies.

COMPLAINT - 18

CASE NO. CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

95.   In furtherance of their scheme, Defendants used the facilities of the US Postal Service or private interstate post carrier to deliver materially misleading documents or other communications in furtherance of their scheme to defraud.

96.   In furtherance of their scheme, Defendants, through the use of wire, radio, telephone, electronic mail and various other means of interstate communication, caused to be transmitted materially misleading documents, messages, writings or other communications in furtherance of their scheme to defraud.

97.   Plaintiffs were injured and such injury was caused by Defendants.

### Third Claim – RICO

#### Count 1

#### Conduct of an Enterprise

98.   Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

99.   Defendants conduct, which amounts to a pattern of racketeering activity, whereby all the named Defendants acting in concert with one another violated 18 U.S.C. Section 1962(c).

100.   Defendants committed multiple acts of Mail and Wire Fraud as identified above, and released multiple misleading press releases in an attempt to artificially inflate HIMC's stock price.

101.   Defendants, through a pattern of "gypsy swaps" and the issuance of false press releases created a market hype around HIMC, and when this specific pattern began to break down, Defendants attempted a hostile takeover of HIMC after having exhausted HIMC's financial resources.

102.   Defendants continue their racketeering activity through a common plan allowing them to continually conduct their "pump and dump" scheme upon unwary and misinformed investors, whereby Defendants sell shares at artificially inflated stock prices as a result of their

COMPLAINT - 19

CASE NO.  CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

1  misleading press releases, and with the revenues therefrom repurchase shares at their lower

2  contracted prices, then shift money back and forth amongst themselves in order to confuse

3  onlookers and the corporation they are contracted to be assisting, in this case HIMC and ITI.

4      103.    Defendants at all times continue to have some other associate or affiliate amongst

5  themselves holding shares in order to maintain an interest in HIMC, all the time perpetrating a

6  fraud on the misinformed financial market and to the detriment of HIMC's valid shareholders

7  who actually paid for their shares legally.

8      104.    In addition to the individuals identified as Defendants, their separate and distinct

9  corporations and business entities, also identified above, continue their "pump and dump"

10 scheme on the misinformed public through other enterprises, such as the Endocare hostile take-

11 over attempt and the Clickpay takeover, in progress: according to information as it is currently

12 understood.

13     105.    Defendants past, present and it now appears, their future activities are illegal and

14 allow them to continually commit fraud and take advantage of misinformed investors and

15 shareholders via the means of interstate commerce.

16     106.    These violations not only have a negative impact on interstate commerce, but also

17 have nearly exhausted Plaintiffs' financial resources, injured their reputation in the financial

18 community, and cost Plaintiffs a substantial amount in legal fees, and all while Defendants have

19 misappropriated hundreds of thousands of dollars.  Further, Defendants' activities harm

20 generally the public's confidence in national securities trading markets.

21 Count 2

22 Investment of Income

23     107.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if

24 fully set forth herein.

25

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

108. Defendants through a planned and orchestrated conspiracy and acting in concert with one another took money derived from a pattern of racketeering activity and invested the money in an attempt to gain control of HIMC: this enterprise violates 18 U.S.C. Section 1962(a).

109. Defendants committed multiple acts amounting to what is commonly referred to as a "pump and dump" scheme, which is more specifically detailed above.

110. Defendants through a pattern of "gypsy swaps" and the issuance of false and misleading press releases created a market hype around HIMC, which in turn allowed Defendants to perpetrate their "pump and dump" amd increase the sale price of the shares, at which time Defendants would sell shares they had not properly acquired and then turn around and purchase additional shares at a price less than the current market price, all with an intent to eventually take over HIMC.

111. Defendants continue their racketeering activity through a common plan allowing them to continually conduct their "pump and dump" scheme upon unwary and misinformed investors, whereby Defendants sell shares on false information and collect the revenues therefrom by continually perpetrating fraud on the market and quickly shifting money back and forth amongst themselves in order to confuse onlookers and the corporation they are supposed to be assisting.

112. Defendants at all times continue to have some other associate or affiliate amongst themselves holding shares in order to maintain an interest in HIMC, all the time perpetrating a fraud on the misinformed financial market and to the detriment of HIMC's valid shareholders.

113. In addition to the individuals identified as Defendants, their separate and distinct corporations, also identified above, continue their pump and dump enterprises on the intentionally misinformed public through other channels such as Endocare and according to the facts as they are currently understood appears to be occurring with Clickpay.

COMPLAINT - 21

CASE NO. CV-

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

114. Defendants past, present and it appears now, their future activities are illegal and allow them to continually commit fraud and take advantage of misinformed investors and shareholders via interstate commerce.

115. These violations not only have a negative impact on interstate commerce, but also have nearly exhausted Plaintiffs financial resources, injured their reputation in the financial community, and cost Plaintiffs a substantial amount in legal fees, all of which has greatly impaired Plaintiffs research abilities, and has irreparably harmed Plaintiffs reputation.

Count 3

Interest/Control

116.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

117. Defendants through a planned and orchestrated conspiracy and through a pattern of racketeering activity intended to directly acquire an interest in, if not control of, HIMC, which is a publicly traded company, thereby violating 18 U.S.C. Section 1962(b).

118. Defendants committed multiple acts amounting to what is commonly referred to as a "pump and dump" scheme, which is more specifically detailed above.

119. Defendants through a pattern of "gypsy swaps" and the issuance of false and misleading press releases created a market hype around HIMC in order to increase the market price of the shares of HIMC common stock, at which time Defendants would sell HIMC shares they had not properly acquired and then turn around and purchase additional shares at a price less than the current market price, all with an intent to eventually take over HIMC.

120. Defendants continue their racketeering activity through a common plan allowing them to continually conduct their "pump and dump" scheme upon unwary and misinformed investors, whereby Defendants sell shares on false information and collect the revenues therefrom by continually perpetrating fraud on the market and quickly shifting money back and

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

1     forth amongst themselves in order to confuse onlookers and the corporation they are supposed to

2     be assisting.

3         121. Defendants at all times continue to have some other associate or affiliate amongst

4     themselves holding shares in order to maintain an interest in HIMC, all the time perpetrating a

5     fraud on the misinformed financial market and to the detriment of HIMC's valid shareholders.

6         123. In addition to the individuals identified as Defendants, their separate and distinct

7     corporations or business entities, also identified above, intentionally continue their pump and

8     dump enterprises on the misinformed public through other channels such as the prior Endocare

9     take-over transaction and, according to the facts as they are currently understood, appears to be

10     occurring with Clickpay.

11         124. Defendants past, present and it appears now, their future activities are illegal and

12     allow them to continually commit fraud and take advantage of misinformed investors and

13     shareholders via interstate commerce.

14         125. These violations not only have a negative impact on interstate commerce, but also

15     have nearly exhausted Plaintiffs financial resources, injured their reputation in the financial

16     community, and cost Plaintiffs a substantial amount in legal fees, all of which has greatly

17     impaired Plaintiffs research abilities, and has irreparably harmed Plaintiffs reputation.

18                                   Count 4

19                                 Conspiracy

20         126.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if

21     fully set forth herein.

22         127.     Defendants acted in concert and conspired to commit the above mentioned

23     racketeering activities amounts to a violation of 18 U.S.C. Section 1962(d).

24                                Prayer for Relief

25

The Otto Law Group, PLLC
601 Union Street, Suite 4500
Seattle, Washington 98101
(206) 262-9545

1    1. Plaintiffs be awarded damages in an amount not less than $25,000,000 for the

2    diminution in value of the 5,000,000 shares of HIMC common stock fraudulently sold to them

3    and in amounts to be proven at trial;

4    2. That this court declare the merger as between ITI and HIMC null and void;

5    3. That in the alternative this court ratify the results of the Annual Shareholders Meeting

6    held on July 19, 2005;

7    3. That this court cancel all shares issued to Defendants for which no consideration or

8    insufficient consideration was received;

9

10    4. That this court award Plaintiffs three times the amount of damages awarded as

11    provided by 18 U.S.C. §1964;

12    5. For their reasonable attorney fees and costs;

13    6. For such other and further relief as the court may find just and equitable.

14

15

DATED: December 1, 2005

16

17

18    THE OTTO LAW GROUP, PLLC

19

20

Tracy M. Shier WSBA # 12827
21    601 union Street, Suite 4500
Seattle, Washington 98164
22    (206) 262-9545
Attorneys for Plaintiff
23

24

25

COMPLAINT - 24

CASE NO. CV-

1
**VERIFICATION**

2
CITY OF TACOMA          )
                        )   ss:
3
COUNTY OF PIERCE        )

4
    Pamela Ehli, being duly sworn, hereby deposes and says:

5
    I am a plaintiff herein. I have read the foregoing complaint and know the contents thereof

6
and the same is true to my knowledge, except as to matters therein stated on information and

7
belief, and as to those matters I believe it to be true.

8

9
                           Pamela Ehli

10
    Subscribed and sworn to before me this ___ day of November, 2005.

11

12
                                 Notary Public    Rebekah Mingus

13
    SEAL                           My Commission Expires: 6-19-08

14

15

16

17

18

19

20

21

22

23

24

25

The Otto Law Group, PLLC
601 Union, Suite 4500
Seattle, Washington 98101
(206) 262-9545

1                           **VERIFICATION**

2   CITY OF TACOMA                    )
                                      )        ss:
3   COUNTY OF PIERCE                  )

4       Ronald Ehli, being duly sworn, hereby deposes and says:

5       I am a plaintiff herein.  I have read the foregoing complaint and know the contents thereof

6   and the same is true to my knowledge, except as to matters therein stated on information and

7   belief, and as to those matters I believe it to be true.

8

9                                              Ronald Ehli

10      Subscribed and sworn to before me this _18th_ day of November, 2005.

11

12                                             Notary Public        _Rebekah Mingus_

13      SEAL                                   My Commission Expires: _6-19-08_

14

15

**VERIFICATION**

CITY OF TACOMA            )
                          )     ss:
COUNTY OF PIERCE          )

Virgil Llapitan, being duly sworn, hereby deposes and says:

I am a plaintiff herein. I have read the foregoing complaint and know the contents thereof and the same is true to my knowledge, except as to matters therein stated on information and belief, and as to those matters I believe it to be true.

_____
Virgil Llapitan

Subscribed and sworn to before me this _18th_ day of November, 2005.

_____
Notary Public            Rebekah Mingus

SEAL

My Commission Expires: 6-19-08

COMPLAINT – V-1

Civil Action No. C

The Otto Law Group, PLLC
601 Union, Suite 4500
Seattle, Washington 98101
(206) 262-9545