UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ITI INTERNET SERVICES, INC., a Washington corporation; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SOLANA CAPITAL PARTNERS, INC., a California corporation; et al.,<br><br>Defendants. | No. C05-2010Z<br><br>ORDER |

This matter comes before the Court on Defendants' motion to dismiss, docket no. 51, and Plaintiffs' motion to strike, docket no. 65. Having reviewed the briefs, supporting declarations and exhibits of the parties, the Court enters the following Order.

## BACKGROUND

This case and a related state court case concern the purported merger of two Washington corporations, ITI Internet Services, Incorporated ("ITI"), and HIMC Corporation ("HIMC"). The Amended Complaint lists five named Plaintiffs as well as John Doe Plaintiffs 1-15. The named plaintiffs are: (1) ITI; (2) RPE Family Trust ("RPE"), a HIMC shareholder; (3) Ronald Ehli, the founder of ITI; (4) Pamela Ehli, Ronald Ehli's spouse and a

ORDER 1–

director, at times, for both ITI and HIMC; and (5) Virgil Llapitan,[1] former director and president of HIMC and an HIMC shareholder. Am. Compl. at ¶¶ 5-9. The Amended Complaint also lists unknown HIMC shareholder Does 1-15 as Plaintiffs. Id. at ¶ 10.

Although the Amended Complaint lists 34 named Defendants and unknown Defendant Roes 1-15, this motion to dismiss is brought only on behalf of the following Defendants: (1) Henry Gurley ("Gurley"), an employee, associate or affiliate of Grant Bettingen, Incorporated; (2) Jerry Cornwell ("Cornwell"), managing member of XXX Enterprises, LLC; (3) K. Mitchell Wiggins ("Wiggins"), managing partner of Western Clearing Corporation, LLC; (4) Judy Morton Johnston, spouse of the deceased Defendant Clifford Johnston ("Johnston"); (5) 4 Points Lake, LLC ("4 Points Lake"), a Minnesota company with its principal place of business in Washington; and (6) Luke D'Angelo (D'Angelo"), (collectively, "Moving Defendants"). See Am. Compl., docket no. 41, ¶¶ 13, 18, 29, 30, 33 and 36. The Moving Defendants' motion to dismiss does not apply to the remaining 28 Defendants.

Broadly stated, Plaintiffs seek a declaratory judgment that the Business Combination Agreement (the "Agreement") entered into by ITI and HIMC is invalid because it was never filed with the Secretary of State of the State of Washington. Id. at ¶¶ 53, 83. Plaintiffs also allege that several of the Defendants' acts constitute securities fraud violations under § 10(b) of the Exchange Act and Rule 10b-5. Finally, Plaintiffs allege that several of the Defendants' acts constitute civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"), 18 U.S.C. § 1962.

**1.    Merger of ITI and HIMC**

ITI is "in the business of facilitating the processing of Internet on-line payments." Am. Compl. at ¶ 47. In November 2001, ITI contracted with Valhalla Financial Group

---

[1] Virgil Llapitan has since been removed as a party to this case. See Order Granting Mot. to Dismiss Virgil Llapitan as a Party Plaintiff, docket no. 64.

ORDER   2–

1  ("Valhalla"), owned by Defendants Johnston and Cornwell, to find a public company with
2  which ITI could merge to accomplish ITI's goal of becoming a public company. Id. at ¶ 48.
3  Valhalla located HIMC, a publicly held company incorporated under Washington law. Id. at
4  ¶¶ 48-49. HIMC was a shell corporation with "no meaningful business operations." Id. at ¶
5  46. In December 2001, HIMC and ITI entered into the Agreement. Id. at ¶ 49. Pursuant to
6  the Agreement, HIMC purchased 100% of ITI's common stock in return for 5,000,000 shares
7  of HIMC common stock. See Compl., docket no. 1, Ex. B. Ron Ehli received 4,500,000 of
8  the HIMC shares (subject to the community property interests of Pam Ehli) and Steve
9  Wohlend received the remaining 500,000 shares as a fee for facilitating the merger. Id. at ¶
10 50. Despite the Agreement, no articles of merger or exchange were ever filed with the
11 Washington Secretary of State. Id. at ¶ 53.

12 Prior to the Agreement, Defendants' Clifford Johnston, Judy Morton Johnston, and
13 Jerry Cornwell comprised the directors and officers of HIMC. Id. at ¶ 51. There were
14 2,941,002 shares of HIMC outstanding before the Agreement and 7,941,002 shares
15 outstanding after the Agreement. Id. at ¶ 52. Once the Agreement was executed, the HIMC
16 Board of Directors (the "Board") resigned and Jon Wiles, Pam Ehli and Virgil Llapitan were
17 appointed to the Board effective December 31, 2001. Id. at ¶ 54.

18     **2.    Factual Allegations for Plaintiffs' Securities Fraud and RICO Act Claims**

19 Plaintiffs' specific allegations fall into three general categories: (1) a "gypsy swap"
20 scheme to raise capital; (2) fraudulent press releases to artificially support the market price of
21 HIMC stock (known as a "pump and dump" scheme); and (3) the hostile takeover and proxy
22 fight for control of HIMC.

23     **A.    "Gypsy Swap" Scheme**

24 Plaintiffs allege that starting in September 2003, after ITI and HIMC entered into the
25 Agreement, various Defendants engaged in a scheme to raise capital using a technique
26 commonly known as a "gypsy swap." Id. at ¶ 56. Defendants Johnston and Millard created

ORDER   3–

the Millard Escrow account, an "escrow trust" with "the knowledge of Defendants Cornwell, Judy Johnston, Wiggins, Western and others" to facilitate a "gypsy swap" scheme. Id. ¶ 57. Plaintiffs allege that HIMC entered into an agreement with the Millard Escrow Account to purchase 2,163,265 shares of HIMC stock at a price of $0.49 per share. Id. at ¶ 59. The Millard Escrow Account subsequently entered into an agreement with Defendant Solana Capital Partners, Inc. ("Solana") to sell the HIMC stock Solana had acquired for prices ranging from $0.60 to $0.90 per share. Id. at ¶ 61. Plaintiffs allege that these transactions resulted in the unjust enrichment of the Millard Escrow Account to the detriment of HIMC. See Am. Compl., docket no. 41, ¶ 65. Western, 4 Points Lake and XXX are alleged to have been involved in the scheme because they transferred HIMC stock to the escrow account. See id. ¶ 58. Moving Defendant Gurley's involvement with the "gypsy swap" scheme in the Amended Complaint is limited to his participation in an agreement between HIMC and Bettingen, Incorporated to give financial advice and raise capital for HIMC. Id. ¶ 64.

### B. Pump and Dump" Scheme - Fraudulent Press Releases by HIMC to Artificially Inflate Stock Prices

Plaintiffs allege that Defendant Aaron McCann issued false and misleading press releases in an attempt to create the appearance of business growth, progress and prosperity. Id. at ¶ 68. Plaintiffs further allege that these fraudulent press releases artificially inflated the market price of HIMC common stock. Id. at ¶¶ 69-70. Although Plaintiffs generally allege that the fraudulent press releases were distributed "at the request and with full knowledge of the other Defendants," the only Defendants specifically alleged to have knowledge of the press releases are Mr. McCann, CCG/Coffin and Sage, none of whom are party to the present motion to dismiss. Id. at ¶¶ 68.

### C. Hostile Takeover of HIMC and Proxy Fight

Plaintiffs next allege that certain Defendants planned a hostile takeover of HIMC through a proxy fight for control of the HIMC board of directors. Id. at ¶ 75. These efforts culminated at the Annual Meeting of Shareholders on July 19, 2005. Id. ¶ 78. Plaintiffs

ORDER  4–

allege that Defendants were "loud, rude and otherwise obnoxious" at the meeting and "did everything in their power . . . to disrupt the meeting." Id.  Plaintiffs do not describe the result of the meeting.  Soon thereafter Defendants initiated a law suit in Pierce County Superior Court claiming that Plaintiffs Ron Ehli and Pam Ehli violated their fiduciary duties as board members of HIMC. Id. ¶ 79; see also Johnston v. HIMC Corp., Cause No. 05-2-10424-0, Superior Court of Pierce County, Washington.

The portion of the Amended Complaint concerning the hostile takeover contains general allegations that Defendants solicited proxies of HIMC shareholders and engaged in improper behavior at the shareholders meeting. Id. ¶¶ 74-78.  Plaintiffs also generally allege that some Defendants at the meeting did not own stock in HIMC. Id. ¶ 80.  Moving Defendant D'Angelo informed Llapitan, a board member of HIMC at the time, that a hostile takeover was imminent if HIMC management did not resign and install Mr. McCann and other unnamed Defendants on the board. Id. ¶ 74.  Defendant Johnston planned the proxy fight with the aid of Defendant's counsel, David Adler, and participated in rude and obnoxious behavior at the shareholders meeting. Id. ¶¶ 75, 78.

### 3.  Related State Court Action

There is a related case pending in state court wherein Defendants in this case filed suit claiming that Plaintiffs Ron Ehli and Pam Ehli violated their fiduciary duties as board members of HIMC. See Johnston v. HIMC Corp., Cause No. 05-2-10424-0, Superior Court of Pierce County, Washington.  Judge Felnagle of Pierce County Superior Court made a partial summary judgment ruling and issued a contempt order against Plaintiffs Ron and Pamela Ehli in the state court action. Id. (granting partial summary judgment against defendants).  The state court judge ordered a special shareholder meeting to re-elect the board. See Adler Decl., docket no. 29, Ex. 2 (Partial Summary Judgment of January 6, 2006).  On February 10, 2006, Judge Felnagle held Pam and Ron Ehli in contempt for violating his order that the board and officers not engage in acts outside the ordinary course

ORDER  5–

of business in an attempt to sever ITI from HIMC.  See Third Alder Decl., docket no. 52, Ex. 1 (Order of Contempt).  Judge Felnagle concluded that "the purported disassociation of ITI Internet Services from HIMC Corporation was an action not in the ordinary course of business and such action should be immediately rescinded by Ron Ehli."  Id.

### 4. Plaintiffs' Motion to Strike

Plaintiffs move to strike references from the Moving Defendants' Reply brief to a letter dated April 10, 2006, from Defendant Judy Johnston to Plaintiffs' counsel Tracy Shier and the Otto Law Group.  Pls.' Mot. to Strike, docket no. 65.  In the letter in question, Johnston represents herself as the Chairman of ITI's Board of Directors and orders Otto to remove ITI as a party to this lawsuit.  Caffer Decl., docket no. 62, Ex. 1.  Plaintiffs contend that the letter is inadmissible as evidence for lack of foundation and because Johnston's authority over ITI is *the* central issue of this case.  Plaintiffs are correct in that Defendants have not established that Ms. Johnston is the Chairman of ITI's Board of Directors.  Plaintiffs' motion to strike is GRANTED.  Exhibit 1 of the Declaration of Kenneth Caffer and all references to the April 10, 2006, letter in Defendants' Reply, docket no. 61, are STRICKEN from the record.[2]

## DISCUSSION

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); No. 84 Employee-Teamster Joint Council Pension Trust Fund v. America West Holding Corp., 320 F.3d 920, 931 (9th Cir. 2003), cert denied, 540 U.S. 966 (2003).  All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.

---

[2] Plaintiffs also move to strike Defendants' Reply brief in its entirety as "hopelessly tainted" by its references to the letter.  Because the Court does not rely on any references to the letter in Defendants' Reply in ruling on the present motion, the Court will not strike Defendants' Reply in its entirety.

ORDER  6–

America West, 320 F.3d at 931; In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 983 (9th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must "allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the [] laws." Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co., 99 F.3d 937, 950 (9th Cir. 1996). The Moving Defendants seek dismissal of each of Plaintiffs' claims pursuant to Rule 12(b)(6).

### 1. Securities Fraud Claim

The elements of a 10b-5 claim include: (1) a material misrepresentation or omission of fact; (2) scienter; (3) a connection with the purchase or sale of a security; (4) transaction and loss causation; and (5) economic loss. See In re Daou Sys., Inc., Sec. Litig. (Daou II), 411 F.3d 1006, 1014 (9th Cir. 2005). In this case, the Moving Defendants first contend that the Plaintiffs' securities fraud claims fail in part because there is no allegation that several of the Plaintiffs purchased or sold HIMC stock during the relevant period. The Moving Defendants also argue that, for those Plaintiffs that did allegedly acquire HIMC stock during the relevant period, the securities fraud claims fail to meet the heightened pleading requirements.

### A.  Purchase and Sale Requirement

As stated in Dauo Systems, one element of a securities fraud claim is that a plaintiff must have been harmed by a material misrepresentation or omission of fact *in connection with the purchase or sale of a security*. 411 F.3d at 1014. Similarly, the Supreme Court has noted that Rule 10b-5 can "only be invoked by a purchaser or seller of securities to remedy fraud associated with his or her own sale or purchase of securities, and [does] not protect those who neither purchased nor sold the securities in question but were instead injured by corporate insiders' sales to third parties." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1504, 1509-10 (2006) (citing Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952)).

ORDER  7−

1    The Moving Defendants contend that the majority of the securities fraud claims in the Amended Complaint fail to allege that the Plaintiffs purchased or sold shares of HIMC "in connection with" a material misrepresentation made by any Defendant. Specifically, the Moving Defendants contend that the Amended Complaint fails to allege: (1) that ITI is, or ever was, a shareholder of HIMC; (2) the dates on which RPE and Does 1-15 purchased or sold HIMC shares, making it impossible to determine whether a connection exists to the alleged fraud; and (3) whether or when Plaintiffs Ronald and Pamela Ehli sold the 4,500,000 shares of HIMC they acquired in December 2001.

The Moving Defendants' characterization of the "purchase and sale" allegation deficiencies is correct. The Amended Complaint fails to identify ITI as an HIMC shareholder, fails to specify purchase and sale dates for the Plaintiffs other than the Ehlis, and fails to allege whether or when the Ehlis sold their 4.5 million shares after acquiring those shares as part of the Agreement. Moreover, the Plaintiffs' conclusory and superficial Response brief fails to address the Moving Defendants' argument as to this issue. Plaintiffs state only that the Amended Complaint repeatedly asserts "numerous acts of Securities Fraud on the part of Defendants, while Defendants' Motion to Dismiss attempts to 'muddle' the Plaintiffs' claims by making several arguments which have no bearing on matters related to this cause of action, but instead, seek to confuse the issues at the heart of this matter." Pls.' Resp., docket no. 60, at 3-4. Because this response is entirely inadequate, the Court presumes that the Moving Defendants' argument has merit. See LR 7(b)(2) (failure to file an opposition to a motion may be considered by the court as an admission that the motion has merit). Accordingly, the Court GRANTS the Moving Defendants' motion to dismiss the securities fraud claims of ITI, RPE, Does 1-15, and (post-Agreement) the Ehlis for failure to adequately allege violations of § 10(b) of the Exchange Act and Rule 10b-5.

ORDER  8−

### B.     PSLRA Heightened Pleading Requirements

The only securities fraud claims alleged to have been "in connection with" the purchase or sale of securities are based on those statements that occurred before and during the execution of the Agreement and relate to the Ehlis acquisition of 4.5 million shares of HIMC stock.  The Moving Defendants argue that these allegedly false or misleading statements regarding the Agreement have not been plead with sufficient particularity under the heightened pleading requirements of the Exchange Act.  The statements are listed in paragraph 85(A)-(C), as follows:

> The following representations or omission [sic] of Defendants were materially false and misleading:
>
> A.  Defendants Clifford Johnston, Judy Johnston, Cornwell, 4 Point Lake and [sic] failed to represent that merger agreement would not be filed or that it had not been filed;
>
> B.  Represented and continued to represent that ITI was a wholly owned subsidiary of HIMC;
>
> C.  Defendants Clifford Johnston, Judy Johnston, Cornwell, 4 Point Lake falsely represented that the merger would qualify as a Type B merger under the Internal Revenue Code of 1954, as amended[.]

Am. Compl. at ¶ 85(A)-(C).

In a securities fraud case, a heightened pleading standard applies for a motion to dismiss under FED. R. CIV. P. 12(b)(6).  FED. R. CIV. P. 9(b) generally requires that pleadings of fraud must state the circumstances constituting fraud with particularity.  The Private Securities Litigation Reform Act of 1995 ("PSLRA") amended the 1934 Act, and imposed heightened pleading requirements for private securities fraud claims.  Silicon Graphics, 183 F.3d at 974.  The PSLRA requires that a complaint alleging securities fraud must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation . . . is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  Plaintiffs must also "state with particularity facts giving rise to a *strong inference* that the

ORDER  9–

defendant acted with the required state of mind." Id. § 78u-4(b)(2) (emphasis added). Plaintiffs "must plead, *in great detail*, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." Silicon Graphics, 183 F.3d at 974 (emphasis added).

The PSLRA provides that a complaint must be dismissed if a plaintiff fails to plead the alleged misleading statements or scienter with particularity. 15 U.S.C. § 78u-4(b)(3)(A). The Ninth Circuit has merged the PSLRA's dual pleading requirements for scienter and falsity into "a single inquiry" because falsity and scienter are "generally strongly inferred from the same set of facts." Ronconi v. Larkin, 253 F.3d 423, 429 (9th Cir. 2001). "In considering whether a private securities fraud complaint can survive dismissal under Rule 12(b)(6), [the Court] must determine whether particular facts in the complaint, taken as a whole, raise a strong inference that defendants intentionally or [with] deliberate recklessness made false or misleading statements." Id. (internal quotation marks and citations omitted).

The Moving Defendants are correct that paragraphs 85(A)-(C) of the Amended Complaint fall far short of the heightened pleading requirements under the PSLRA. First, Plaintiffs' allegation in paragraph 85(A) that four of the Moving Defendants "failed to represent that merger agreement would not be filed or that it had not been filed" is not supported by any particularized allegation of materiality or scienter. The Amended Complaint does not allege who knew the alleged omission was false or misleading, when they knew it, why the omission was material, or the circumstances that created a duty for Clifford Johnston, Judy Johnston, Cornwell, and 4 Point Lake to make the disclosure. The Amended Complaint includes only conclusory and blanket assertions that *all* of the 16 allegedly false or misleading statements and omissions in paragraphs 85(A)-(P) "were in all respects material" and "were made under circumstances in which the Defendants knew the falseness of their statements." Am. Comp. ¶ 87, 89. Such allegations are insufficient to survive a motion to dismiss under the PSLRA pleading requirements. Second, the allegation

ORDER  10–

in paragraph 85(B) that the Defendants "represented and continued to represent that ITI was a wholly owned subsidiary of HIMC" fails to state with particularity when the representations were made, to whom they were made, and why they were material.  Finally, the allegation in paragraph 85(C) that four of the Moving Defendants "falsely represented that the merger would qualify as a Type B merger under the Internal Revenue Code of 1954, as amended," also fails to state with particularity when the representation was made, to whom it was made, why it was material, and why Plaintiffs were entitled to rely on Defendants' opinion about a legal matter that was independently verifiable.

In sum, each of the securities fraud allegations in the Amended Complaint related to the Ehlis' acquisition of HIMC shares via the Agreement fail to satisfy the heightened pleading requirements of the PSLRA.  In most cases, courts should freely grant leave to amend when a viable case may be presented.  FED. R. CIV. P. 15(a).  When the allegations in a securities fraud complaint are inadequate to establish a strong inference of scienter, dismissal with leave to amend is the most prudent course of action, unless it is clear that the pleading could not be saved by amendment.  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052-53 (9th Cir. 2003).  Accordingly, the Court GRANTS the motion and dismisses Plaintiff's Second Claim for securities fraud as to the Moving Defendants without prejudice.

**2.    Civil RICO Claims**

Plaintiffs' third claim alleges that Defendants violated the RICO Act, 18 U.S.C. § 1962.  Am. Compl. at ¶¶ 94-127.  In relevant part, 18 U.S.C. § 1962 prohibits the following conduct and activities:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
> . . .

ORDER  11–

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

The RICO Act defines "racketeering activity" as any act chargeable under several generically described state criminal laws, any act indictable under numerous specific federal criminal provisions, including wire and mail fraud, or any offense involving bankruptcy or securities fraud or drug-related activities that is punishable under federal law. See 18 U.S.C. § 1961(a); see also Sodomy v. Ambrose Co., 473 U.S. 479, 481-82 (1985) (establishing the scope of racketeering activities under RICO). In the present case, Plaintiffs allege that Defendants engaged in the predicate acts of wire fraud, mail fraud, and securities fraud. See Am. Compl. at ¶¶ 94-127.

**A.   Reliance on Securities Fraud Allegations Insufficient in Civil Actions**

The Moving Defendants contend, among several other arguments, that the Plaintiffs' RICO Act claim is precluded by 18 U.S.C. 1964(c), which establishes a civil cause of action to private parties injured through RICO Act violations but expressly provides "that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." The Ninth Circuit has recognized this restriction in affirming the dismissal of similar suits. In Howard v. America Online, the plaintiffs argued that § 1964(c)'s prohibition on private suits based on securities fraud claims did not apply to their case because they lacked standing to bring the securities fraud claims. See 208 F.3d 741, 749 (9th Cir. 2000). The Ninth Circuit concluded otherwise, holding that § 1964(c) bars the relying on any conduct as a "predicate act" that would have been

ORDER  12–

actionable as securities fraud, regardless of whether a party has standing to bring securities fraud claims. Id.; see also Powers v. Wells Fargo Bank NA, 439 F.3d 1043 (9th Cir. 2006) (§ 1964(c)'s prohibition applies to individual and class action suits alike).

Here, the Moving Defendants argue that all of Plaintiffs' purported RICO claims are fundamentally based on allegations in the nature of securities fraud claims. The Moving Defendants are correct. Although the grounds for the RICO Act claims are not entirely clear, there are multiple references to the alleged "gypsy swap" scheme, the issuance of allegedly false press releases to increase the market value of HIMC stock, and the alleged use of a "pump and dump" scheme that harmed "unwary and misinformed investors." See Am. Compl. at ¶¶ 102-105, 111-114, 119-123. Also, while the Amended Complaint does include allegations of mail and wire fraud in relation to the stock allegations, the substance of the RICO Act claims is clearly based on the same allegations underlying the securities fraud claims. Id. at ¶¶ 76, 96, 101. The Court also notes that Plaintiffs offer only a conclusory response to the Moving Defendants' contention that the RICO Act claims are based on securities fraud allegations. See Pls.' Opp. at 4 ("Plaintiffs' RICO claims are not based on general securities law violations, but rather on specific instances of acts committed by Defendants which are in violation of broader RICO laws").

### B.   Pleading Requirements for Wire Fraud and Mail Fraud

The elements of wire and mail fraud include: (1) a scheme or an artifice to defraud; (2) use of the U.S. mails or wires in furtherance of the said scheme; and (3) use of the mails or wires with the specific intent to deceive or defraud. See Schreiber Dist. v. Serv-Well Furniture, 806 F.2d 1393 (9th Cir. 1986). Allegations of wire and mail fraud used to establish RICO violations under § 1962(a)-(c) must be pled with the particularity required by FED. R. CIV. P. 9(b). See Moore v. Bayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989) ("We have applied the particularity requirements of Rule 9(b) to RICO claims); see also Lewis v. Spark, 612 F. Supp. 1316, 1325 (N.D. Cal. 1985) ("Under Section 1962(a)-

ORDER   13–

(c) . . . allegations must identify the time, place, and manner of each fraud, plus the role of each defendant in the scheme"). Such allegations must define the specific involvement of the individual defendants. See Lewis v. Spark, 612 F. Supp. at 1325 (finding that indictments establishing the time, place, and manner of alleged fraud but failing to list the involvement of individual defendants does not adequately plead fraud under the RICO Act).

The Moving Defendants contend that, to the extent the Amended Complaint alleges some wire and mail fraud allegations, those allegations do not plead fraud with sufficient particularity to survive this motion to dismiss. For example, paragraph 76 of the Amended Complaint alleges: "Defendants and each of them engaged in a proxy solicitation effort whereby they contacted by telephone and use of the mail shareholders of HIMC, including Defendants, in order to obtain their signatures on a proxy prepared by them granting certain of the Defendants power to vote the shares owned by the solicited shareholders." This allegation fails to note the role or conduct of any particular Defendant. See Lewis v. Spark, 612 F. Supp. at 1325 (complaint must adequately inform each defendant what they are alleged to have done). The Amended Complaint fails to give the time, place, or manner of the alleged fraud, nor does it allege the circumstances under which the conduct was illegal. For all of these reasons, the allegations of wire and mail fraud in paragraph 76 fail to meet the heightened pleading requirements of Rule 9(b) and do not establish a predicate act under RICO.

The allegations of wire and mail fraud in paragraphs 96 and 101 fail to establish predicate acts for similar reasons. Paragraph 96 alleges: "In furtherance of their scheme, Defendants used the facilities of the US Postal Service or private interstate post carrier to deliver materially misleading documents or other communications in furtherance of their scheme to defraud." Paragraph 101 alleges: "Defendants committed multiple acts of Mail and Wire Fraud as identified above, and released multiple misleading press releases in an attempt to artificially inflate HIMC's stock price." These allegations do not establish the

ORDER  14–

time, place, or manner of the alleged fraud. The allegations in paragraphs 96 and 101 fail to establish any illegal conduct constituting "racketeering activities" as is necessary to support a RICO claim and do not meet the heightened pleading requirements of FED. R. CIV. P. 9(b). Accordingly, the motion to dismiss the RICO Act claims is GRANTED and the claims are DISMISSED without prejudice as to the Moving Defendants.

### 3. Plaintiffs' Claim for a Declaratory Judgment of Merger Invalidity

Plaintiffs' first cause of action requests a declaratory judgment that the business entities HIMC and ITI are not merged as a matter of law. See Am. Compl., ¶ 83. Plaintiffs allege that "[t]here is no dispute that the Business Combination Agreement first alleged in paragraph 49 above was never filed with the Secretary of State of the State of Washington and, accordingly, Plaintiffs request this Court to grant them judgment that the business entities HIMC and ITI are not now nor were they ever merged or otherwise combined as a matter of law." Id. Defendants request that the Court dismiss this cause of action for three reasons: (1) the Court does not have jurisdiction to hear the claim under the Declaratory Judgment Act; (2) the issue has already been addressed in state court such that this Court is precluded from ruling on the issue pursuant to 18 U.S.C. § 1738 (codification of the Full Faith and Credit clause); and (3) the Court has the discretion, which it should exercise, to refuse to hear claims under the Declaratory Judgment Act, 28 U.S.C. § 2201.

Because it is dispositive, the Court need only address one of the three bases for the Moving Defendants' motion to dismiss Plaintiffs' Declaratory Judgment Act claim. The Ninth Circuit has held that "[d]eclaratory relief is in the discretion of the district court" and the "exercise of that discretion will allow the rejection of cases" that are properly before other courts. See Cheesebrough-Pond's, Inc. v. Faberge, Inc., 666 F.2d 393, 396 (9th Cir. 1982). Moreover, unlike general principles of abstention, no showing of "exceptional circumstances" is required to support a district court's decision to abstain from hearing a declaratory relief action. Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995) ("Distinct

ORDER 15–

features of the Declaratory Judgment Act . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the "exceptional circumstances" test of Colorado River."); Golden Eagle Ins. Co. v. Travelers Cos., 103 F.3d 750, 753 (9th Cir. 1996) (the existence of a parallel state proceeding would be a major factor in the district court's consideration of "practicality and wise judicial administration"), overruled on other grounds, Government Employees Ins. Co. v. Dizol, 133 F.3d 1220 (9th Cir. 1998). Here, the declaratory relief sought by Plaintiffs is closely related to the issues that are, or should be, before the Pierce County Superior Court in Case No. 05-2-10424-0. Taking that factor into account, along with the dismissal of the securities fraud and RICO Act claims, the Court exercises its discretion and GRANTS the motion to dismiss the declaratory judgment claim as to the Moving Defendants.

## CONCLUSION

The Moving Defendants' motion to dismiss, docket no. 51, is GRANTED. The following Defendants are DISMISSED WITHOUT PREJUDICE: (1) Henry Gurley; (2) Jerry Cornwell; (3) K. Mitchell Wiggins; (4) Judy Morton Johnston; (4) 4 Points Lake, LLC; and (6) Luke D'Angelo.

Plaintiffs' motion to strike, docket no. 65, is GRANTED IN PART to the extent it seeks to strike references to the letter of Judy Johnston attached as Exhibit 1 to the Caffer Declaration.

IT IS SO ORDERED.

DATED this 27th day of June, 2006.

Thomas S. Zilly
United States District Judge

ORDER  16–